**Reversed and Rendered and Memorandum Opinion filed September 16, 2014.**



In The

# Fourteenth Court of Appeals

## NO. 14-13-00808-CV

## VENTURE COTTON COOPERATIVE AND NOBLE AMERICAS CORPORATION, Appellants

### V.

### GEORGE NEUDORF, Appellee

**On Appeal from the 152nd District Court**
**Harris County, Texas**
**Trial Court Cause No. 2011-68521**

## M E M O R A N D U M   O P I N I O N

Venture Cotton Cooperative and Noble Americas Corporation (collectively, "Venture Cotton") appeal the trial court's denial of their motion to confirm an arbitration award in their favor arising from a commercial dispute with George Neudorf. Venture Cotton argues in two issues that Neudorf failed to (1) assert any valid grounds for setting aside the arbitration award; and (2) create an evidentiary record demonstrating that the award should be set aside. We reverse and render

judgment confirming the arbitration award.

## BACKGROUND

Neudorf and Venture Cotton entered into a "Venture Cotton Cooperative Membership and Marketing Agreement" on June 3, 2010, in which Neudorf agreed to sell all of his produced cotton to Venture Cotton. The agreement provided that "[a]ll disputes will be resolved pursuant to binding arbitration pursuant to the arbitration rules of the American Cotton Shippers Association" ("the Association"). Venture Cotton sued Neudorf for breach of contract in Texas state court on November 11, 2011.

Venture Cotton's original district court petition listed "206 County Road 211, Seminole, Texas" as the address where Neudorf "may be served." Unsuccessful attempts to serve Neudorf at that address were made in December 2011 and January 2012. According to the sheriff's record, Neudorf's father stated that Neudorf was living in Plains, Texas. Venture Cotton filed a motion on May 12, 2013, for substituted service to the "206 County Road 211" address. The district court issued citation to "1161 County Road 255, Plains, Texas" on May 22, 2012. The record does not indicate whether service was attempted. The district court also issued citation to "210 County Road 402K, Seminole, Texas" on September 14, 2012. The record does not indicate whether service was attempted.

Venture Cotton filed an arbitration complaint with the Association on November 21, 2012. The Association sent the arbitration documents via Federal Express to Neudorf at "206 County Road 211, Seminole, Texas" on November 26, 2012. Federal Express tracking stated "delivery exception, incorrect address." On December 7, 2012, the Association attempted to mail the arbitration documents via United States Postal Service Express Mail to "P.O. Box 237 Plains, Texas," an address given by Neudorf in the "Venture Cotton Cooperative Membership and

2

Marketing Agreement." Delivery again was unsuccessful, with the tracking stating "Notice Left (No Authorized Recipient Available)" and "Forward Expired." The Association attempted to send arbitration documents via United States Postal Service Express Mail to Neudorf at 210 County Road 402K, Seminole, Texas on December 14, 2012. The mailing was returned because the address did not exist.

After the third failed attempt to send the arbitration documents to Neudorf, the Association sent Venture Cotton an email stating:

> In the above case, we have attempted to deliver via FedEx and US Mail the arbitration documents but have been unsuccessful. Therefore, we will proceed with the arbitration 'ex parte' as per Arbitration Rule 5(b) which states, **'Should either party refuse to sign the Contract for Arbitration (found on the Association website) or refuse to pay the required fees and expenses or refuse to participate in the arbitration, <u>then the party refusing shall have waived the right to offer evidence and argument and the Arbitration Committee shall proceed with the arbitration 'ex parte.'</u>** In such event, the parties shall nevertheless be subject to the provisions of the Contract for Arbitration described in this subsection, and the decision of the Arbitration Committee or Arbitration Appeals Committee shall be binding on both parties to the controversy.'
>
> We will inform you when we have assigned the Arbitration Committee.

The Association's arbitration panel concluded that Venture Cotton was entitled to a default judgment against Neudorf pursuant to Texas law and the Association's Arbitration Rules. The arbitration panel stated: "Although the panel would rather make its decision based on actual production versus estimated production in the under[lying] delivery claims, we realize Neudorf's evasiveness has hampered plaintiff's ability and rights to discovery under The Marketing Agreement." The Association confirmed the arbitration panel's award in favor of Venture Cotton on March 1, 2013.

Following the arbitration award, the trial court issued a fourth citation to the original 206 County Road 211 address. Neudorf was served successfully and filed an original answer.

Venture Cotton filed a motion to confirm the arbitration award on June 19, 2013. Neudorf responded, asserting that the award should be vacated because the Association violated its arbitration rules and the Association's process did not satisfy constitutional requirements. Venture Cotton responded, arguing that Neudorf did not assert any valid grounds to deny confirmation, that Neudorf's allegations were not true, and that the burden fell on Neudorf to demonstrate confirmation should be denied.

The trial court signed an order denying Venture Cotton's motion to confirm the arbitration award on August 23, 2013. This appeal followed. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.098 (Vernon 2011).

## ANALYSIS

### I.    Standard of Review

It is undisputed that the Federal Arbitration Act ("FAA") governs this case. Texas state courts have jurisdiction to consider confirmation of an arbitration award under the FAA. *See Credigy Receivables, Inc. v. Mahinay*, 288 S.W.3d 565, 568 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

An arbitration award governed by the FAA must be confirmed unless it is vacated, modified, or corrected under certain limited grounds. *Amoco D.T. Co. v. Occidental Petroleum Corp.*, 343 S.W.3d 837, 844 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). We review *de novo* a trial court's order confirming or vacating an arbitration award under the FAA. *Id.*

Arbitration is strongly favored under both federal and Texas law; review of

4

an arbitration award is "extraordinarily narrow" because of the limited grounds upon which an arbitration award may be vacated under the FAA.[1] *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 898 (Tex. 1995); *Tanox, Inc. v. Akin, Gump, Strauss, Hauer & Feld, L.L.P.*, 105 S.W.3d 244, 250 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). An arbitration award has the same effect as a judgment of a court of last resort; accordingly, all reasonable presumptions are indulged in favor of the award, and none against it. *CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002).

## II.    Confirmation of the Arbitration Award

Neudorf argued below that the arbitration award was invalid and unenforceable because (1) Neudorf's due process rights were violated when he did not receive notice; and (2) the Association did not follow its own rules in arbitrating this matter. Venture Cotton argues in its first issue that Neudorf failed to assert any valid grounds to deny confirmation of the arbitration award, and that constitutional due process protections do not apply to an arbitration process accomplished by private actors.

### A.    Statutory Grounds for Denying Confirmation

Under the FAA as applied in a Texas state court confirmation proceeding, an arbitration award must be confirmed unless it is vacated, modified, or corrected pursuant to one of the limited grounds set forth in sections 10 and 11 of the FAA. *See Amoco D.T. Co.*, 343 S.W.3d at 841. "A party seeking to vacate an arbitration award bears the burden of presenting a complete record that establishes grounds for vacatur." *Id.*

---

[1] Unlike the FAA, the Texas Arbitration Act does not preclude parties from agreeing to limit the arbitrator's authority by allowing for judicial review of an arbitration award for reversible error. *See Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 97 (Tex. 2011). The parties had no such agreement in this case.

Section 10(a) of the FAA provides that a trial court may vacate an arbitration award upon the application of any party to the arbitration:

(1) where the award was procured by corruption, fraud, or undue means;

(2) where there was evident partiality or corruption in the arbitrators, or either of them;

(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)-(4) (2012). The bases for vacatur in section 10 are exclusive. *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008).

Neudorf argues that he "never received notice of the arbitration proceedings and therefore[,] was not able to present facts for the arbitrator to consider in order to come to a mutual, final, and definite award." According to Neudorf, vacatur is warranted under section 10(a)(4) because the arbitrators exceeded their power by going forward with the arbitration under these circumstances.

Arbitrators exceed their power when they decide a matter not properly before them. *IQ Holdings, Inc. v. Villa D'Este Condo. Owner's Assoc., Inc.*, No. 01-11-00914-CV, 2014 WL 982844, at *4 (Tex. App.—Houston [1st Dist.] Mar. 13, 2014, no pet.); *Ancor Holdings, LLC v. Peterson, Goldman & Villani, Inc.*, 294 S.W.3d 818, 829 (Tex. App.—Dallas 2009, no pet.). Arbitrators derive their authority from the arbitration agreement; therefore, the power and authority of an arbitrator depends on the provisions under which the arbitrator was appointed. *See*

6

*IQ Holdings, Inc.*, 2014 WL 982844, at \*4; *see also Glover v. IBP, Inc.*, 334 F.3d 471, 474 (5th Cir. 2003) ("To determine whether an arbitrator exceeded his powers, we must examine the language in the arbitration agreement."). If the parties bargained for arbitration, "an arbitral decision 'even arguably construing or applying the contract' must stand, regardless of a court's view of its merits or demerits." *IQ Holdings, Inc.*, 2014 WL 982844, at \*4 (quoting *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013)). An arbitration award may not be vacated under section 10(a)(4) of the FAA based on the arbitrator's errors in interpretation or application of the law or facts. *Id.* (citing *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010) ("It is not enough for petitioners to show that the [arbitration] panel committed an error—or even a serious error.")).

Neudorf argues that the arbitration committee's failure to provide notice was a procedural error that provides a valid basis to vacate the arbitration award under section 10(a)(4). Neudorf cites *Stolt-Nielson S.A. v. Animal Feeds International Corp.*, 559 U.S. 662 (2010), for the proposition that the Association's arbitration committee exceeded its powers so as to provide a basis for vacatur under section 10(a)(4). In *Stolt-Nielsen*, the Supreme Court concluded that the arbitrator exceeded its powers because it did not identify and apply a rule derived from the FAA or other applicable body of law; instead, it imposed its own policy choice and thus, exceeded its powers. *Stolt-Nielson S.A.*, 559 U.S. 676-77. *Stolt-Nielsen* does not apply here because the Association's arbitration committee was interpreting the Association's arbitration rules, which bound the parties. *See Roehrs v. FSI Holdings, Inc.*, 246 S.W.3d 796, 808-09 (Tex. App.—Dallas 2008, pet. denied) (An arbitral body's interpretation and enforcement of its own rules is entitled to great judicial deference and will not be vacated absent evidence showing that the

7

arbitral body manifestly disregarded its own rules.).

Although Neudorf's argument is couched in terms of procedural error, it is in essence an argument that the arbitration committee mistakenly applied its own rules. The parties agreed in the "Venture Cotton Cooperative Membership and Marketing Agreement" that "[a]ll disputes [would] be resolved pursuant to binding arbitration pursuant to the arbitration rules of [the Association]." Section 5b of the Association's arbitration rules states:

> Should either party refuse to sign the Contract for Arbitration (found on the Association website) or refuse to pay the required fees and expenses or refuse to participate in the arbitration, then the party refusing shall have waived the right to offer evidence and argument and the Arbitration Committee shall proceed with the arbitration "ex parte." In such event, the parties shall nevertheless be subject to the provisions of the Contract for Arbitration described in this subsection, and the decision of the Arbitration Committee or Arbitration Appeals Committee shall be binding on both parties to the controversy.

The Association's arbitration committee concluded that it was appropriate to proceed *ex parte* under section 5b in light of Neudorf's "evasiveness" after multiple unsuccessful attempts to deliver arbitration documents to Neudorf by (1) United States Postal Service Express Mail to the P.O. Box address he listed in the "Venture Cotton Cooperative Membership and Marketing Agreement," and (2) Federal Express delivery at the 206 County Road 211 address at which he eventually was served with process in the subsequent lawsuit to confirm the arbitration award.

Neudorf disputes this interpretation of the Association's rules. However, a dispute regarding the proper application of the Association's rules is not a basis for vacating the arbitration award absent circumstances involving — at the very least — manifest disregard of those rules. *See id.* at 809. No such circumstances are

8

present here.  The Association's arbitration rules do not provide a basis to conclude that the Association acted improperly.  Even if the committee's interpretation of the Association's rules was debatable, vacatur would not be appropriate because a mere disagreement over proper interpretation does not rise to the level of manifest disregard.  The trial court could not deny confirmation of the arbitration award under FAA section 10(a)(4) based on a contention that the arbitrators erred when they determined proper notice had been given and *ex parte* proceedings were permitted under section 5b.  *See id*. at 808-09.  Thus, section 10(a)(4) does not provide a basis upon which to affirm the district court's order.

## B.    Due Process

Neudorf argues that the arbitration award violates due process and is void because the Association did not provide notice.  Venture Cotton contends that this argument fails because due process considerations do not apply in a context involving private actors.  Venture Cotton also contends that Neudorf's argument fails because "constitutional due-process requirements do not apply to rules for private arbitration agreed upon by the parties."

This court has stated that "parties in an arbitration proceeding have due process rights to notice and a meaningful opportunity to be heard."  *Ewing v. Act Catastrophe-Tex. L.C.*, 375 S.W.3d 545, 551 (Tex. App.—Houston [14th Dist.] 2012, pet. denied) (citing *Bernstein Seawell & Kove v. Bosarge*, 813 F.2d 726, 729 (5th Cir. 1987)).  We assume for argument's sake that due process standards do apply in this context.  *See Chase Home Fin., L.L.C. v. Cal W. Reconveyance Corp.*, 309 S.W.3d 619, 630 (Tex. App.—Houston [14th Dist.] 2010, no pet.) ("Absent a decision from a higher court or this court sitting en banc that is on point and contrary to the prior panel decision or an intervening and material change in the statutory law, this court is bound by the prior holding of another panel of this

court."). [2]  The trial court's order cannot survive scrutiny even with this assumption.

Due process generally requires that notice be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).  Due process is satisfied when notice procedures are followed in compliance with the rules under which the parties agreed to be bound.  *See id.*; *see also Ying Chun Tan v. Hung Pin Lee*, No. 14-06-00319-CV, 2007 WL 582084, at \*4 (Tex. App.—Houston [14th Dist.] Feb. 27, 2007, no pet.) (mem. op.); *Brozo v. Shearson Lehman, Hutton, Inc.*, 865 S.W.2d 509, 511 (Tex. App.—Corpus Christi 1993, no writ).

Here, the parties agreed to be bound by the Association's arbitration rules, which provide in relevant part:

> Section 5.
>
> (a) To commence a case, a complaint must be submitted to the President. This complaint should state specifically the nature of the dispute; including the defendant's name and address, applicable contract numbers, date of incident giving rise to the dispute, and the amount of damages claimed.

---

[2] Other courts have concluded that private arbitration does not involve state action requisite for a constitutional due process claim. *See, e.g., Davis v. Prudential Sec., Inc.*, 59 F.3d 1186, 1191 (11th Cir. 1995) ("[T]he state action element of a due process claim is absent in private arbitration cases."); *Fed. Deposit Ins. Corp. v. Air Florida Sys., Inc.*, 822 F.2d 833, 842 n.9 (9th Cir.1987) ("The arbitration involved here was private, not state, action; it was conducted pursuant to contract by a private arbitrator. Although Congress, in the exercise of its commerce power, has provided for some governmental regulation of private arbitration agreements, we do not find in private arbitration proceedings the state action requisite for a constitutional due process claim."); *Elmore v. Chicago & Ill. Midland Ry. Co.*, 782 F.2d 94, 96 (7th Cir. 1986) ("[T]he fact that a private arbitrator denies the procedural safeguards that are encompassed by the term 'due process of law' cannot give rise to a constitutional complaint.").

(b) The President then will prepare and submit to the disputants a Contract for Arbitration, to be signed by a responsible officer of each firm which is party to the dispute or by an individual party. This Contract for Arbitration shall provide that the disputants agree: to abide by the award of the Arbitration Committee, or of the Arbitration Appeals Committee if the original verdict is appealed by one or more of them; and to release the Association and the members of said committee(s) from all responsibility for any errors in judgment that may occur in any respect whatsoever, and from any damage or loss resulting from their acts.  It shall be the duty of each party to complete the Contract for Arbitration and return it within fifteen (15) days from the date the party receives the Contract from the President.  Should either party refuse to sign the Contract for Arbitration (found on the Association website) or refuse to pay the required fees and expenses or refuse to participate in the arbitration, then the party refusing shall have waived the right to offer evidence and argument and the Arbitration Committee shall proceed with the arbitration "ex parte." In such event, the parties shall nevertheless be subject to the provisions of the Contract for Arbitration described in this subsection, and the decision of the Arbitration Committee or Arbitration Appeals Committee shall be binding on both parties to the controversy.

*         *         *

(h) In cases of proven financial hardship[,] the fees and expenses required by these rules may be waived or reduced by the President. Except in cases of proven financial hardship, a party refusing to pay its share of fees or expenses shall forfeit its right to offer evidence or appear and be heard.  In such cases the President shall give written notice to the refusing party of the time and date for commencement of the hearing, and the hearing shall be conducted to conclusion without the refusing party's participation.

*         *         *

Section 8

*         *         *

(i) When a case is to be considered, the chairman of the Committee shall fix a time and a place for its hearing, and shall give the President fifteen (15) days['] notice of the date and the place so fixed, so as to enable the President to give the parties to the arbitration ten (10) days['] notification of the date and the place of the hearing . . . .

11

The Association followed the governing rules and sent notice to the address listed for Neudorf in the "Venture Cotton Cooperative Membership and Marketing Agreement." The Association also attempted to send notice to other addresses for Neudorf.

After three failed attempts to provide notice to Neudorf, the arbitration committee determined that Neudorf was evading the arbitration proceedings and refusing to participate in the hearing under section 5b so as to authorize *ex parte* arbitration proceedings. This determination is supported in light of the Association's multiple unsuccessful attempts to deliver arbitration documents to Neudorf by (1) United States Postal Service Express Mail to the P.O. Box address he listed in the "Venture Cotton Cooperative Membership and Marketing Agreement," and (2) Federal Express delivery at the 206 County Road 211 address at which he eventually was served with process in the subsequent lawsuit to confirm the arbitration award. These circumstances satisfied any applicable due process requirements. *See Brozo*, 865 S.W.2d at 511 (notice to party's former lawyer was sufficient under New York Stock Exchange arbitration rules even though party contended that he did not actually receive notice). This result comports with the applicable standard favoring arbitration. *See E. Tex. Salt Water Disposal Co. v. Werline,* 307 S.W.3d 267, 271 (Tex. 2010); *CVN Grp., Inc.*, 95 S.W.3d at 238. Thus, Neudorf's constitutional due process contention does not provide a basis upon which to affirm the district court's order. Accordingly, we sustain Venture Cotton's first issue.

## CONCLUSION

Having found the trial court erred in refusing to confirm the arbitration award, we do not address Venture Cotton's final issue. Venture Cotton requests that we render judgment confirming the arbitration award. *See Banc of Am. Inv.*

12

*Servs., Inc. v. Lancaster*, No. 2-06-314-CV, 2007 WL 2460277, at *7 (Tex. App.—Fort Worth Aug. 31, 2007, no pet.) (mem. op.) (court of appeals rendered judgment awarding costs and expenses as set out in the arbitration award).  Neudorf has not asserted any other grounds in this court or in the trial court for setting aside the arbitration award.  We reverse the trial court's order denying Venture Cotton's motion to confirm the arbitration award and render judgment confirming the arbitration award.  *See* Tex. R. App. P. 43.2(c); *Werline v. E. Tex. Salt Water Disposal Co.*, 209 S.W.3d 888, 901 (Tex. App.—Texarkana 2006), *aff'd*, 307 S.W.3d 267 (Tex. 2010); *Riha v. Smulcer*, 843 S.W.2d 289, 294 (Tex. App.—Houston [14th Dist.] 1992, writ denied).

/s/     William J. Boyce
Justice

Panel consists of Justices Boyce, Donovan, and Wise.